## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

DON JUAN STAPLES, et al.,

     Plaintiffs,

v.                                 CIVIL ACTION NO. 2:23-cv-00429

JASON YATES, et al.,

     Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

Six motions are pending before me in this matter, each raising substantially the same issues regarding the legal sufficiency of Plaintiffs' claims for relief: [1] Plaintiff Don Juan Staples's Motion for Leave to Amend the Complaint [ECF No. 17]; [2] Defendant David R. Karr, Jr.'s Motion to Dismiss [ECF No. 7]; [3] Defendant Yulonda Gancs's Motion to Dismiss [ECF No. 9]; [4] Ms. Gancs's Motion to Submit Addendum in Support of Dismissal [ECF No. 16]; [5] Defendant Jason Yates's Motion to Dismiss [ECF No. 11]; and finally, [6] Mr. Yates's Motion to Construe Response Brief [ECF No. 22]. In light of the relatedness of these motions, I will take them up together herein. For the following reasons, I rule that Mr. Karr's Motion to Dismiss [ECF No. 7] is **DENIED** as moot; Ms. Gancs's Motion to Dismiss [ECF No. 9] and Motion to Submit Addendum [ECF No. 16] are **DENIED** as moot; [3] Mr. Yates's Motion to Dismiss [ECF No. 11] and Motion to Construe [ECF No. 22] are **GRANTED**; and [4] Mr. Staples's Motion for Leave to Amend [ECF No. 17] is **DENIED** as futile, and [5] Mr. Staples is subject to a prefiling injunction as set forth herein.

I.    **Background**

Plaintiffs Don Juan Staples ("Mr. Staples") and his mother, Deborah Lawson Staples (Ms. Staples), (together, "Plaintiffs"), each proceed without counsel in this civil action. They filed their Complaint on June 9, 2023, naming four Defendants: Jason Yates ("Yates"), identified in the Complaint as "the Senior Vice President of Shellpoint Mortgage Servicing;" James Tomasik ("Tomasik"), identified as "the owner of WV Trustee Services, LLC;" Yulanda Gancs ("Gancs"), identified as "the owner of IV Holdings, LLC;" and David Karr Jr. ("Karr"), identified as the "owner of Karr Law Office." [ECF No. 1 at 1-2].

The subject of Plaintiffs' Complaint appears to be the foreclosure of an alleged mortgage encumbering a parcel of real property at 1339 Mountain Road, South Charleston, West Virginia (the "Parcel"), resulting in Plaintiffs' eviction and the subsequent sale of the Property. *Id.* at 1. As discussed *infra*, however, the Complaint sets forth few allegations of fact aside from a brief recitation of vague and conclusory assertions. *See id.* Based upon this paucity of information, the alleged circumstances which gave rise to Plaintiff's action are impossible to discern from the face of the Complaint itself. Therein, Plaintiffs purport to assert five "Legal Claims" for relief: [1] breach of contract; [2] violation of "Consumer Protection Laws and TILA;"[1] [3] "Mortgage Servicing Abuse;" [4] "Predatory Lending;" and [5] fraud and mistake. [ECF No. 1 at 3-4 ¶¶ 16-20]. The first four claims are alleged solely as to Defendant Yates, but the fifth claim for fraud and mistake is alleged as to all four of the named Defendants—Karr, Gancs, Yates, and Tomasik. *Id.* Plaintiffs assert that "[a]s a result of the Defendant[s'] fraudulent

---

[1] It appears that this allegation refers to unspecified sections of "Regulation Z of the Federal Truth in Lending Act[,] 15 USC § 1601" and "the Fair Debt Collections Practices Act[,] 5 USC § 1692." [ECF No. 1 at 3-4 ¶ 17].

actions, the Plaintiff(s) have suffered significant financial losses and emotional distress." *Id.* at 5. They seek relief in the form of a "judgement against Defendants for damages in the amount of $75,000," as well as "injunctive relief to prevent from trespassing on said property or violating the plaintiff(s) constitutional rights[.]" *Id.*[2]

On June 23, 2023, Defendant Tomasik filed an Answer to Plaintiffs' Complaint, denying liability and asserting that the Court lacks subject-matter jurisdiction in this civil action. [ECF No. 6]. While Tomasik's Answer "reserves the right to file a motion to dismiss," *id.* at 1, to date he has not submitted any further filings in this matter.

Shortly thereafter on June 26, 2023, Defendant Karr filed his pending Motion to Dismiss. [ECF No. 7]. Therein, he expressly "adopt[ed] by reference any Rule of Civil Procedure 12(b)(6) arguments advanced by Yulonda Gancs . . . which apply to this defendant as well[.]" [ECF No. 7 at 4 n.1]. The following day on June 27, 2023, Defendant Gancs filed her Motion to Dismiss in which she argues that, *inter alia*, Plaintiffs' Complaint "fails to set forth any acts by these defendants to support the allegations against them" as required by the plausibility standard of Rule 8(a)(2), and fail to plead their claim for fraud "with the required specificity" pursuant to Rule 9(b). *Id.* at 2. Three days later on June 30, 2023, Defendant Yates filed the final pending Motion to Dismiss, seeking dismissal on the same grounds as well as pursuant to Rule 12(b)(2). [ECF No. 11].

Subsequently, U.S. Magistrate Judge Dwane L. Tinsley, pursuant to my order of referral [ECF No. 4], ordered Plaintiffs to respond to Karr's Motion to Dismiss by July 10,

---

[2] Plaintiffs attached several documents to their Complaint, including a Uniform Commercial Code ("UCC") Financing Statement [ECF No. 1-1 at 2]; a Certificate of Incorporation for "Spiritual Herb and Healing Company" issued by the West Virginia Secretary of State on March 19, 2021 [*id.* at 4]; and a treaty between the United States and the country of Morocco, dated September 16, 1836. *Id.* at 6-15. None of these documents are referenced in the Complaint; nor do they have any apparent relevance to the Complaint. Nonetheless, I have considered these materials in taking up the pending motions.

2023, and to respond to Gancs's and Yates's Motions to Dismiss by July 14, 2023, [ECF Nos. 8; 15]. Judge Tinsley's Order expressly notified Plaintiffs that failure to respond to these motions may constitute abandonment of their claims, and result in dismissal of this civil action for failure to prosecute [ECF No. 8 at 1]. Judge Tinsley explained to Plaintiffs that—while a document filed by a pro se party is to be liberally construed—a plaintiff's pro se status does not alter application of the Federal Rules of Civil Procedure, or this Court's Local Rules of Civil Procedure, to his or her filings. *See* L.R. Civ. P. 83.7. Judge Tinsley also ordered Plaintiffs to review this Court's *Pro Se Handbook* prior to filing a response, including Section 9 regarding Motions, and to review this Court's Local Rules of Civil Procedure, including Local Rule 7.1. [ECF No. 8 at 1-2]. Judge Tinsley's Order further directed Plaintiffs where to find these materials on the Court's website. *Id.*

Plaintiffs did not respond by July 10, 2023, as ordered by Judge Tinsley; nor did they seek an extension of time to do so. Instead, on that date Mr. Staples filed a Motion for Leave to Amend the Complaint. [ECF No. 17]. Therein, Mr. Staples argues that leave to amend should be granted "because it will clarify the dispute between parties and will not cause any prejudice." *Id.* Mr. Staples attached a proposed Amended Complaint [ECF No. 17-1], which was also styled as a Memorandum of Law in Support of his request for leave to amend the Complaint.[3] Therein, Plaintiffs assert that "[t]he new complaint maintains the counts and allegations against the same defendants from the original complaint . . . but accounts for the specific conduct violating the plaintiff's right[s], the time and the place of that conduct, and the identity of the responsible party(ies)." *Id.* at 1.

---

[3] Unlike the Motion for Leave to Amend the Complaint, which was signed and submitted by Mr. Staples alone, the proposed Amended Complaint is signed by both of the Plaintiffs. [*Compare* ECF No. 17, *with* ECF No. 17-1].

On July 31, 2023—two weeks after the date by which Plaintiffs were ordered to respond to the Defendants' motions to dismiss—Mr. Staples filed an untimely response and supporting memorandum of law (together, the "response brief"). [ECF No. 20]. Therein, he objected to the Defendants' pending motions to dismiss and "pled for the forgiveness of the Honorable Court" on the Plaintiffs' behalf, explaining that Plaintiffs "were evicted from their land … which has caused a housing instability and homelessness for Plaintiffs for the past forty-five days" and "[t]his instability created the delay[.]" [ECF No. 21]. The body of the response brief is vaguely phrased, making it difficult to discern the basis for Mr. Staples's opposition aside from general assertions that discovery has not taken place, and certain unspecified facts are in dispute. *See id.*

On July 18, 2023, Defendant Yates filed a response opposing amendment on the ground that granting Plaintiffs leave to amend their Complaint and file their proposed Amended Complaint ("AC") would be futile. As Mr. Yates explains, the AC does not address any of the deficiencies alleged in Defendants' motions to dismiss; instead, Plaintiffs' allegations "stray[] even further away from this Court's pleading standard than the Original Complaint." *Id.* at 1. The time for the parties to submit further briefing having run pursuant to the Orders of this court and Rule 7.1(a)(7) of the Court's Local Rules, this matter is now ripe for adjudication.

## II.   **Legal Standards**

### a.   **Motions to Dismiss**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need not include "detailed factual allegations," but must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* The district court must accept as true all factual allegations contained in the complaint; however, bare "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are not enough. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), a district court may not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). However, the court is generally permitted to take judicial notice of matters of public record. *Brown v. Cabell Cty. Bd. of Educ.*, 3:09-cv-0279, 2009 WL 1470471, at *2 (S.D. W. Va. May 22, 2009) (citing *Sec'y of State of Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Likewise, the court may consider "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In the event of conflict between the allegations of the complaint and any attached or incorporated exhibit, "the district court should consider the nature of the document and why the plaintiff attached it." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). "When the plaintiff attaches

or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations is proper." *Id.* "But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

Finally, where—as in the matter *sub judice*—plaintiffs are proceeding without counsel, "[a] document filed pro se is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This requirement of liberal construction does not mean, however, that a district court may ignore a clear failure in the pleading to allege sufficient facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

b.   **Motions to Amend**

Rule 15 of the Federal Rules of Civil Procedure governs a plaintiff's motion to amend his or her complaint, and provides in relevant part that "[t]he court should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this liberal standard, a district court may properly deny a motion to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (alteration, citations, and internal quotation marks omitted). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face," or "if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citation and

7

internal quotation marks omitted). To determine whether amendment would be futile, federal district courts test the legal sufficiency of the proposed amended complaint pursuant to the same plausibility standard set forth in Rule 12(b)(6). *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).

### III.   <u>Discussion</u>

Each of the Defendants' pending motions are grounded upon an assertion that Plaintiffs' Complaint is facially deficient. The crux of Mr. Staples's response is that he should be permitted to amend the Complaint and address those deficiencies.

### a.   <u>Ms. Gancs's Motion to Submit Addendum</u>

On July 2, 2023—approximately one week before the response deadline set by Magistrate Judge Tinsley, Ms. Gancs filed a Motion to Submit Addendum in support of her pending motion to dismiss. [ECF No. 16]. The Addendum raised two additional grounds for dismissal: claim preclusion and issue preclusion. *Id.* Ms. Gancs argued that there is good cause for the Court to consider the Addendum because she was unaware of the State Court Order at the time she moved to dismiss. *Id.* at 1, 7-9. Plaintiffs did not respond to Ms. Gancs's motion to submit or otherwise object. In light of my finding, *infra*, that the Court lacks the requisite subject-matter jurisdiction required to hear Plaintiffs' fraud claim against Ms. Gancs, her motion [ECF No. 16] is **DENIED** as moot.

### b.   <u>Mr. Yates's Motion to Construe Response Brief</u>

In Mr. Yates's August 9, 2023, Motion to Construe Response Brief [ECF No. 22], he requests that, should the Court permit Plaintiffs to amend their Complaint, then Yates's July 18, 2023, brief in response [ECF No. 19] to Mr. Staples's motion to amend be construed "as a timely filed Motion to Dismiss." [ECF No. 22 at 2]. In support of his

request, Mr. Yates explains that his argument "regarding the futility of the Motion to Amend" under Federal Rule 15 "equally apply to a motion to dismiss" under Rules 12(b)(2) and 12(b)(6)." *Id.* Pursuant the Court's Local Rules of Civil Procedure, Plaintiffs' response to Mr. Yates's subject motion was required to be filed and served on opposing counsel within 14 days from the date of service of the motion. L.R. Civ. P. 7.1(a)(7). As of the date of the instant Order—more than seven months after Mr. Yates served his subject motion—neither of the Plaintiffs have submitted any response, or otherwise objected to or opposed the motion, despite having proper notice of the deadline to file their response.

On June 27, 2023, Magistrate Judge Tinsley expressly notified Plaintiffs that, pursuant to Local Rule 83.7, the liberal construction afforded to pro-se pleadings does not alter application of the Federal Rules of Civil Procedure—or this Court's Local Rules of Civil Procedure—to their pleadings and other filings. [ECF No. 8 at 1-2]. Judge Tinsley specifically ordered Plaintiffs to review Local Rule 7.1 prior to filing a response. Plaintiffs also had prior notice of the substance of Mr. Yates's arguments, because his response to Plaintiffs' Motion to Amend was filed on July 18, 2023, [ECF No. 19]. Plaintiffs were permitted to file a reply within 14 days pursuant to Local Rule 7.1(a)(7) and thus respond to the substance of Mr. Yates's response; however, they elected not to do so. Consequently, I find that Plaintiffs will not incur undue prejudice by affording Mr. Yates the relief he seeks, and Mr. Yates's Motion to Construe Response Brief [ECF No. 22] is **GRANTED**.

### c.   **Defendants' Motions to Dismiss**

Defendants Yates, Gancs, and Karr each move to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6), arguing that it fails to state a plausible claim for relief. In reviewing the legal sufficiency of Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, I must review the factual allegations to determine whether Plaintiffs allege sufficient factual matter, accepted as true, to state a facially plausible claim. Turning to the section of Plaintiffs' Complaint titled "Factual Allegations," the Complaint solely asserts the following six sentences:[4]

9.   Plaintiff(s) have no legally binding contract that exists with [Defendants] Jason Yates, James Tomasik, Yulanda Gancs, and/or David Karr Jr.

11.   As material inducement to enter a contract, [Defendants] Jason Yates, James Tomasik, Yulanda Gancs, and David Karr Jr. made a series of representations and warranties intended to mislead plaintiff(s).

12.   Jason Yates, James Tomasik, Yulanda Gancs, and David Karr Jr. have violated [Plaintiffs] Don and Deborah Staples with unfair practices dealing with the rights of personal property within trade and commerce.

13.   Plaintiff(s) are the true Beneficial owners, who have absolute birthright to real property and to physically control it.

14.   Jason Yates, James Tomasik, Yulanda Gancs, and David Karr Jr. had actual intent to hinder, delay and defraud [Plaintiffs] Don and Deborah Staples without receiving a reasonably equivalent value in exchange for the transfer or obligation.

15.   Jason Yates, James Tomasik, Yulanda Gancs, and David Karr Jr. have violated Don and Deborah Staples by sending false statements in the mail.

[ECF No. 1 at 3 ¶¶ 9, 11-15].

The next section of Plaintiffs' Complaint, titled "Legal Claims," purports to assert five causes of action ("claims"). [*See* ECF No. 1 at 3]. Four claims are asserted solely as to Defendant Yates—[1] breach of contract; [2] violation of "consumer protection laws"

---

[4] Additionally, the tenth paragraph alleges that "[t]he Act and Practices of Jason Yates, James Tomasik, Yulanda Gancs, and David Karr Jr., as alleged in this complaint are in or affecting commerce as commerce is defined in Section 4 of the FTC ACT 15 USC 44." *Id.* ¶ 10. However, this statement is purely a legal conclusion, and from its face cannot be construed as an allegation of fact even pursuant to the liberal pleading standard applied to pro-se parties.

under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e ("FDCPA") and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"); [3] "mortgage servicing abuse;" and [4] predatory lending in violation of the TILA. [*See* ECF No. 1 at 3-4 ¶¶ 16-19]. Only the final claim for "fraud and mistake" is directed to all of the named Defendants—Mr. Karr, Ms. Gancs, Mr. Yates, and Mr. Tomasik. *Id*. at 4-5 ¶ 20. Because the majority of Plaintiffs' legal claims are asserted toward Mr. Yates, I first turn to his motion to dismiss.

i.     **Defendant Yates's Motion to Dismiss**

Defendant Yates raises three central grounds in support of his motion to dismiss Plaintiffs' Complaint. [ECF No. 11]. First, he asserts that dismissal is proper pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the six broad, conclusory sentences comprising the "Facts" section of Plaintiffs' Complaint are too "feeble" and insufficient to comprise a plausible claim. Additionally, with respect to Plaintiffs' purported claim for "fraud and mistake," Mr. Yates asserts that these "feeble" factual allegations fall short of the heightened pleading standard in Rule 9(b). [ECF No. 12 at 2, 15]. He also raises two arguments in the alternative, each of which rely on matters outside the pleadings: three other civil actions involving Mr. Staples, including a prior civil action brought by Plaintiffs against Mr. Yates's employer, Shellpoint, in this Court. Yates attaches copies of pleadings from those actions, and requests that the court take judicial notice thereof. [ECF Nos. 11-1; 11-2; 11-3;] Lastly, Mr. Yates argues that dismissal of Plaintiffs' claims against him in this civil action is proper pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for "lack of personal jurisdiction." [ECF No. 12 at 12]. Attaching his own June 29, 2023, Declaration in support [ECF No. 11-4], Mr. Yates asserts that he cannot be called into Court in the U.S. District Court for the Southern District of

West Virginia because he has no minimum contacts with the State of West Virginia, and cannot be personally called into Court based upon the alleged conduct of Shellpoint merely by virtue of his position as the Senior Vice President of Shellpoint. *See id.*

Mr. Staples's "argument" in the response brief is comprised of nothing more than mere unsupported conclusions; arguments regarding facts and claims that are not alleged in the Complaint; and fictional maxims that echo common "Sovereign-Citizen" doctrine,[5] with no remote applicability, including the following:

> Since plaintiffs(s) has clearly alleged intentional interference with an existing business relationship coupled with plaintiff's legal rights and damage, it has stated a prima facie case, and the burden has shifted to the defendants to establish that their interference was justified;
>
> Governments cannot make unbonded rulings or statutes which control commerce, free enterprise citizens, or sole proprietorships without suspending commerce by general declaration of martial law;
>
> All men and women know that the foundation of law and commerce exists in the telling of the truth, the whole truth, and nothing but the truth;
>
> Ignorance of the law might be an excuse, but it is not [a] valid reason for the commission of a crime when the law is easily and readily available to anyone making a reasonable effort to study the law.

*See id.* In fact, the response brief sets forth only two nonfrivolous statements. First, Mr. Staples asserts that "there exist unresolved justiciable issues of material fact and law in each count of plaintiff's complaint against defendant(s) Jason Yates, Yulanda Gancs, and David R. Karr such that summary judgment is not appropriate." *Id.* at 3-4. Mr. Staples does not, however, attempt to identify or explain what these purported "justiciable issues"

---

[5] *See generally*, Samuel Barrows, Sovereigns, Freemen, and Desperate Souls: Towards A Rigorous Understanding of Pseudo-litigation Tactics in United States Courts, 62 B.C. L. Rev. 905 (2021) (describing common features in legal filings by "sovereign citizens"); Francis X. Sullivan, The "Usurping Octopus of Jurisdictional Authority": The Legal Theories of the Sovereign Citizen Movement, 1999 Wis. L. Rev. 785 (1999) (describing the most common beliefs and legal theories of "sovereign citizens"). As discussed *infra*, Mr. Staples has been specifically informed by the Court that such arguments are completely meritless. Once again, however, Mr. Staples has chosen to ignore the instructions and orders of this Court and to persist in precisely the same conduct that he was expressly notified is improper.

are or the basis for his position. *See id.* Similarly, Mr. Staples also asserts that "summary judgment is not proper" because the parties have not completed discovery in this matter and therefore the facts have not been sufficiently developed. *Id.* Again, however, he does not refer to any facts or otherwise explain what in particular requires such further development. *See id.* Plaintiff sidesteps completely the threshold requirement to plead a plausible claim for relief before this matter may advance to discovery.

(a)      **Breach of Contract**

Turning to Plaintiffs' first asserted cause of action, breach of contract, they allege in paragraph 16 of the Complaint that Mr. Yates breached an unidentified contract by failing to deliver goods or services under it, failing to perform "its" obligations, failing to provide accurate information not identified by Plaintiffs, and by failing to honor certain unidentified contractual terms. "To state a claim for breach of contract under Rule 12(b)(6), [the plaintiff] must allege facts sufficient to support the following elements: the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009). Assuming the contract at issue is the alleged mortgage identified on page 1 of the Complaint, there are no allegations regarding the parties to that mortgage, including the lender or the borrower(s). As a result, Plaintiffs fail to set forth a plausible claim for relief; instead, they improperly alleged an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Ironically, Plaintiffs' only express allegation is that they "have no legally binding contract that exists with James Yates" and the other defendants. [ECF No. ¶ 9.] This allegation is actually fatal to their breach-of-contract claim, as Mr. Yates cannot be held liable for breaching a non-existent contract. Further, even if the Complaint sufficiently alleged the first element of the claim, there are no allegations regarding the second element. Specifically, the Complaint fails to allege any action taken by Plaintiffs in furtherance of performing under the (non-existent) contract. The allegations regarding the alleged breach are thus patently conclusory, and thus inadequate to state a claim. *See Kennedy v. BAC Home Loans Servicing, LP*, 3:13-11401, 2013 WL 5274365, at *6 (S.D.W. Va. Sept. 18, 2013) (finding the plaintiffs' breach-of-contract claim inadequate based upon mere allegations that the defendant "fail[ed] to account for and to apply the check for the total amount of the payoff until May of 2011," and "by taking affirmative steps to foreclose on the Plaintiffs' homestead."). Consequently, I find that—particularly when combined with Plaintiffs' seven vague, threadbare, and conclusory allegations of fact—Plaintiffs' "unadorned, the-defendant-unlawfully-harmed-me accusation" is patently insufficient as a matter of law, and dismissal of this claim against Mr. Yates is proper.

(b)     **Consumer Protection Violations**

The allegations set forth in paragraph 17 of the Complaint, which assert that Mr. Yates violated the "TILA"--ostensibly the "Truth in Lending Act"--and unspecified "consumer protection laws," are likewise deficient because Plaintiffs do not set forth the statutory basis for the alleged violations aside from merely listing, without explanation, *Deutsche Bank Tr. Co. v. Peabody*, an opinion from the Supreme Court of Saratoga County, New York regarding a plaintiff's claim under the Fair Debt Collections Practices

Act ("FDCPA"). 866 N.Y.S.2d 91 (Sup. Ct. 2008). Without identifying the statutory section of TILA or FDCPA Mr. Yates is alleged to have violated, however, the Complaint does not allow this Court to plausibly draw the reasonable inference that Mr. Yates, personally, is liable for the misconduct alleged. Additionally, the Complaint fails to allege a necessary element to apply the FDCPA or the TILA apply to Mr. Yates personally: that Yates, in his individual capacity, is a debt collector subject to the FDCPA; that he personally qualifies as a debt collector; or that he engaged in conduct that could give rise to personal liability for unlawful debt collection practices under the FDCPA.

In *Jones v. Greene*, a pro se litigant's FDCPA claims against the president of a debt-collection company were dismissed for similar reasons. 1:20-CV-101, 2021 WL 1916821, at *4 (N.D. W. Va. Mar. 15, 2021), *adopted*, 1:20-CV-101, 2021 WL 1392843 (Apr. 13, 2021). Here, just as in *Jones*, none of the Complaint's allegations plausibly assert that Mr. Yates is a debt collector--either personally or on behalf of Shellpoint, by virtue of his employment as the Senior Vice President of Shellpoint. As the *Jones* court explained, a defendant's job title--standing alone--does not support an FDCPA claim. Id. at *4. Without more, I find that the allegations set forth in Plaintiffs' Complaint are insufficient to state a claim for relief as a matter of law, and dismissal of Plaintiffs' "Consumer Protection" claim against Mr. Yates is proper.

(c)    **Mortgage Servicing Abuse**

Turning to Plaintiffs' claim for "mortgage servicing abuse" as set forth in paragraph 18 of the Complaint, the allegations set forth therein are likewise insufficient to state a claim for relief as a matter of law. First, the Complaint fails to set forth the constitutional, statutory, or common-law rights Mr. Yates has allegedly violated. "Mortgage servicing

15

abuse" is not a recognized common-law claim, and the Complaint fails to set forth—or even hint at—any statute imposing liability for Mr. Yates's vaguely alleged conduct. A general claim that Mr. Yates caused "mortgage servicing abuse" is patently inadequate to allow Mr. Yates or this Court to infer what private right of action entitles Plaintiffs to relief. To the contrary, Plaintiffs' allegations form nothing more than another "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. As a result of these inadequacies, I find that dismissal of Plaintiffs' "mortgage-servicing abuse" claim against Mr. Yates is proper.

(d)   **Predatory Lending**

The allegations set forth in paragraph 19 of the Complaint, which assert that Mr. Yates violated the TILA, are likewise deficient as a matter of law. Plaintiffs allege therein that Mr. Yates violated the TILA by failing to provide accurate or complete disclosures and by using confusing or deceptive language. Again, however, the Complaint completely fails to identify the type of alleged disclosures at issue or the contents of the disclosures-- including the alleged inaccurate, incomplete, or deceptively worded contents therein. Against this paucity of factual allegations, the Complaint further does not state the statutory basis for Plaintiffs' "predatory-lending" claim, and does not state facts from which this Court could draw a reasonable inference that Mr. Yates is subject to TILA's requirements. TILA defines a creditor as a person who regularly extends loans, and "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of the indebtedness." 15 U.S.C. § 1602(g). Plaintiffs have not alleged that Mr. Yates "regularly extends" loans, nor that Mr. Yates, personally, was the person to whom the mortgage debt was initially payable.

In fact, the Complaint does not even address the alleged date(s), means, or manner by which Mr. Yates purportedly made any disclosure. Instead, Plaintiffs have merely alleged that Mr. Yates is an officer of Shellpoint. Similar to *Green*, cited *supra*, the Complaint cannot state a claim against Mr. Yates by virtue of Mr. Yates' title. Even if the acts of Shellpoint were somehow attributable to Mr. Yates, the Complaint does not provide any of this information with respect to the company either. Without more, this claim is merely speculative and clearly fails to meet the minimum standard of plausibility. As a result of these glaring procedural inadequacies, I find that dismissal of Plaintiffs' claim against Mr. Yates for "mortgage servicing abuse" is proper.

(e)     **Fraud and mistake**

Lastly, with respect to Plaintiffs' final claim against Mr. Yates (as well as the remaining named Defendants, discussed *infra*) for fraud and mistake, there can be no question that the allegations in paragraph 20—or indeed, the allegations found anywhere else in the Complaint—are woefully inadequate to meet the heightened pleading requirement under Rule 9(b). Plaintiffs allege generally that the defendants (1) "made a false representation of fact . . . by stating that they were giving Plaintiff(s) a loan; and (2) "intentionally concealed important information and misrepresented facts to the Plaintiff(s) about the credit extended and the loan agreement." [ECF No. 1 at 4-5]. These general facts are fundamentally insufficient to apprise Mr. Yates of what "acts are relied upon as constituting fraud." *See Est. of Dearing by Dearing v. Dearing*, 646 F. Supp. 903, 914 (S.D.W. Va. 1986). Thus, "Plaintiffs have not alleged what misrepresentations were made, what was concealed or any other circumstance surrounding the alleged fraud." *Id.*

In fact, the Complaint does not even meet the liberal plausibility standard of Rule 8(a)(2), because the allegations are entirely speculative, and do not even set forth all of the required elements of fraud. Generally, a common-law claim for fraud is comprised of four elements: (1) the act claimed to be fraudulent was the act of the Defendant, or was induced by him; (2) the Defendant's fraudulent act was both material, and false; (3) the Plaintiffs relied upon this fraud and were justified under the circumstances in reasonably relying upon it; and, finally, that (4) Plaintiffs were damaged as a result of their reliance thereon. *Bluestone Coal Corp. v. CNX Land Res., Inc.*, 1:07-CV-00549, 2007 WL 6641647, at *3 (S.D.W. Va. Nov. 16, 2007) (citing *Cordial v. Ernst & Young*, 483 S.E.2d 248, 259 (W. Va. 1996)).

Here, Plaintiffs' Complaint alleges vaguely that the named Defendants made false representations of fact and concealed important information. The Complaint never alleges that Plaintiffs relied on defendants' alleged misrepresentations and omissions, nor that Plaintiffs were justified in their reliance. Stated another way, taking all of the Complaint's factual allegations as true and construing the pro-se Plaintiffs' pleading with maximum liberality in the light most favorable to them, the "who, what, when, where, and how" of the alleged fraud is impossible to discern without speculating. As a result of these glaring procedural inadequacies, I find that dismissal of Plaintiffs' fraud claim against Mr. Yates on this count is proper.

Lastly, despite Plaintiffs' characterization of this cause of action as a claim of "fraud and mistake," the Complaint clearly asserts *intentional* conduct by the Defendants and does not implicate any mistake by any party. Based upon this context, I find that Plaintiffs' stated legal claims for fraud *and mistake* is merely an idiomatic reference to a fraud claim.

18

Moreover, even if Plaintiffs intended to allege a claim of mistake, their allegations are facially insufficient to set forth a plausible claim for relief. Pursuant to West Virginia law, a "mutual mistake is one which is common to all parties, wherein each labors under the same misconception respecting a material fact or provision within the agreement." *Ryan v. Ryan*, 640 S.E.2d 64, 65 at Syl. Pt. 2 (W. Va. 2006). None of Plaintiffs' allegations allow this Court to find that there was a mutual mistake of fact regarding the purported contract at issue. Indeed, paragraph 20 of the Complaint alleges the opposite — that the Defendants made false representations of fact with the intention of inducing Plaintiffs into the contract, and that the defendants intentionally concealed important information and misrepresented facts. Because Plaintiffs' Complaint fails to assert any facts which could give rise to a mutual-mistake claim, they have not alleged facts with the requisite particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, and dismissal is proper. Based upon my finding that the Complaint is deficient on its face and fails to state a claim for relief against Mr. Yates as a matter of law, it is unnecessary for me to consider the alternative arguments advanced in Mr. Yates's motion to dismiss regarding other civil actions brought by Mr. Samples, or the personal-jurisdiction issue, as each of these alternative arguments rely upon matters outside the pleadings.

Based upon the foregoing I find that the Complaint fails to state a plausible claim for relief as a matter of law, and Mr. Yates's Motion to Dismiss [ECF No. 9] is **GRANTED**.

ii.   **Plaintiffs' Claims Against the Remaining Defendants**

As Plaintiffs' claims against Mr. Yates are dismissed, only the fraud claim survives as to Defendants Tomasik, Gancs, and Karr (collectively, the "Remaining Defendants"). *Id*. at 4-5 ¶ 20. As an initial matter, I first turn to Tomasik's Answer to the Complaint,

which raises the issue of subject-matter jurisdiction. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect be waived by the parties. See *United States v. Cotton*, 535 U.S. 625, 630, (2002). As the Fourth Circuit explained, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, **must**) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (emphasis added) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). I thus take up the issue of subject-matter jurisdiction *sua sponte*, despite Mr. Tomasik's decision not to move for dismissal pursuant to Rule 12(b)(1). A plaintiff "has the burden of proving that subject matter jurisdiction exists" over each claim raised in the complaint, and the Court must dismiss any claims over which subject-matter jurisdiction does not exist. *See Clayton v. Landmark Prop. Mgmt. Co.*, 4:20-CV-00013, 2021 WL 281156, at *1 (W.D. Va. Jan. 28, 2021) (citing Fed. R. Civ. P. 12(h)(3)).

Here, Plaintiffs assert that the Court "has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. [§] 1331," as it purportedly arises under federal law. [ECF No. 1 at 2 ¶ 1].[6] Section 1331 confers original jurisdiction upon the federal district courts for "all civil actions arising under the Constitution, laws, or treaties of the United States."

---

[6] Plaintiffs do not claim that 28 U.S.C. § 1332 confers jurisdiction upon this Court; nor could they. It is undisputed that Plaintiffs share West Virginia citizenship with Defendants Tomasik, Gancs, and Karr. [*See id.* at 1 ¶¶ 3-8; *see also* ECF No. 1-7 at § 3]. Consequently, consideration of § 1332 is unnecessary.

28 U.S.C. § 1331. My jurisdictional determination thus turns upon whether Plaintiffs'
claim of fraud and mistake "arises under" federal law.

A civil action can 'arise under' federal law in two ways." *Flying Pigs, LLC v. RRAJ
Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014). "Most commonly, 'a case arises under
federal law when federal law creates the cause of action asserted.' " *Id.* (quoting *Gunn v.
Minton*, 568 U.S. 251, 257 (2013)). *See also Grable & Sons Metal Prods., Inc. v. Darue
Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (evaluating whether the plaintiff's Complaint
plaintiff "plead[s] a cause of action created by federal law"). Here, the allegations in the
Complaint do not support a finding that federal law creates Plaintiffs' claim for fraud and
mistake. The Complaint alleges as follows:

> Fraud and Mistake Jason Yates, James Tomasik, Yulanda Gancs, and David
> Karr Jr. made a false statement of fact with the intention of inducing
> Plaintiff(s) into the contract by stating they were giving Plaintiff(s) a loan;
>
> Defendants intentionally concealed important information and
> misrepresented facts to the Plaintiff(s) about the credit extended and the
> loan agreement;
>
> Defendants' actions were intentional and they knew the false statements
> were untrue at the time they were made, and when Plaintiff(s) requested an
> investigation on the account, Defendants' fraudulent conduct was intended
> to induce Plaintiff(s) to act in a way that they would not have otherwise if
> they were given a full disclosure.
>
> As a result, of the Defendants' fraudulent actions, the Plaintiff(s) have
> suffered significant financial losses and emotional distress.

[ECF No. 1 at 4-5]. These broad allegations do not assert, refer to, or implicate any federal
law, and clearly do not "raise any questions about the proper interpretation of federal
law," as the right to relief has no dependence upon "the construction or application of
federal law." *Id.*

Without more, it is well-established that "run-of-the-mill" fraud claims arise under state common law. *See Toler v. Claudio & Johnson, Att'ys at L., LLC*, 2:18-CV-01267, 2018 WL 6182694, at *2 (S.D.W. Va. Nov. 27, 2018) (concluding that the plaintiffs' fraud claims "do not arise under federal law"). *See also Brown v. Prove Identity, Inc.,* 22-CIV-9315, 2024 WL 1195331, at *5 (S.D.N.Y. Mar. 20, 2024) (declining to exercise supplemental jurisdiction "over [plaintiff's] state-law claims for breach of contract, fraud," and other common-law tort claims"); *Sun City Emergency Room, LLC v. Phelan*, 3:23-cv-1785, 2024 WL 346514, at *4 (N.D. Tex. Jan. 29, 2024) (concluding that the plaintiffs' fraud claims "do not arise under federal law"); *Mather v. Nakasone*, 13-436, 2013 WL 4788930, at *2 (D. Haw. Sept. 5, 2013) (finding that the plaintiffs' allegations of fraud constituted a "state law claim" and dismissing for lack of subject-matter jurisdiction under § 1331). Based upon the foregoing, it is clear that state law creates the cause of action, and Plaintiffs' fraud claim does not "arise under" federal law.

A "second, more narrow basis" for asserting subject-matter jurisdiction pursuant to § 1331 is applicable only to a state-law cause of action implicating "a 'significant' federal issue." *Flying Pigs*, 757 F.3d at 181. Here, however, nothing in the Complaint—or in the record as a whole—supports a finding that Plaintiffs' fraud claim implicates any federal issue, let alone a "significant federal issue." *See id.* Plaintiffs have thus failed to meet their burden to allege federal subject-matter jurisdiction in their Complaint. Consequently, this Court lacks the power to hear Plaintiff's remaining claim, and I must dismiss this civil action pursuant to Rule 12(h) of the Federal Rules of Civil Procedure.

iii.   **Legal Sufficiency of Complaint**

(a)   **Gancs's Motion to Dismiss [ECF No. 9]**

Even if the Court could assert subject-matter jurisdiction over Plaintiffs' claims against Defendants Gancs and Kerr, dismissal is nonetheless appropriate on the merits. Defendant Gancs asserts in her motion to dismiss that the Complaint "fails to set forth any acts by [any of] these defendants" to support Plaintiffs' claim of fraud and mistake, as required by the plausibility standard of Rule 8(a)(2). [ECF No. 9 at 2]. Based upon the paucity of factual allegations in the Complaint, Ms. Gancs argues that there are insufficient factual allegations "to raise a right to relief above the speculative level," and therefore "[t]here is no possible claim plaintiffs could have against Defendants . . . under the allegations set forth in the Complaint." *Id.* at 4, 6. Again highlighting the Complaint's patently deficient factual allegations, Ms. Gancs likewise asserts that Plaintiffs failed to set forth their allegations of fraud and mistake with the requisite particularity pursuant to the heightened pleading standard of Rule 9(b). *Id.* Ms. Gancs's argument prevails for the same reasons discussed *supra* in the context of Defendant Yates's motion to dismiss. As Plaintiffs' Complaint fails to state a plausible claim for relief against Ms. Gancs as a matter of law, dismissal is proper.

Lastly, Defendant Gancs seeks dismissal on the alternative ground that Plaintiffs "were never in privity of contract with the plaintiffs." *Id.* at 2. It appears that this fact is undisputed, as Plaintiffs' Complaint alleges that "Plaintiff[s] ha[ve] no legally binding contract that exists with Jason Yates, James Tomasik, Yul[o]nda Gancs, and/or David Karr[,] Jr." [ECF No. 1 at 3]. In any event, Ms. Gancs asks the Court to convert her motion to dismiss into a motion for summary judgment and consider the Trustee's Report of Sale

Under Deed of Trust [the "Report"][7] attached as an exhibit to her motion. [ECF No. 9 at 4]. Because I find that the Complaint is deficient on its face as a matter of law, it is unnecessary for me to consider these arguments or the Trustee's Report, as they reflect matters outside the pleadings. [ECF No. 7 at 3]. Based solely upon the patently deficient allegations set forth in the Complaint, therefore, dismissal is proper.

(b)      **Defendant Karr's Motion to Dismiss**

In his motion to dismiss, Defendant Karr Expressly adopts by reference the Rule 12(b)(6) arguments advanced by his former client, Ms. Gancs. [ECF No. 7 at 4 n.1]. Mr. Karr asserts that Ms. Gancs's argument is equally applicable to him, because the Complaint is devoid of any specific dates or time period(s) during which the events at issue are alleged to have occurred, as well as *any other explanation* to support an inference that Mr. Karr engaged in fraudulent conduct. *Id.* at 2. For the same reasons discussed *supra* regarding Plaintiffs' fraud claim against Mr. Yates and Ms. Gancs, I find that the Complaint fails to state a plausible claim for relief against Mr. Karr as a matter of law, and dismissal is proper.

Mr. Karr alternatively asserts in his motion to dismiss that he is an attorney who came into contact with Plaintiffs solely in connection with the representation of his client, Defendant Gancs. *Id.* at 1. Karr asserts that he represented Ms. Gancs following her purchase of the subject Parcel from a third party—an individual named Matthew Dickey—on November 11, 2022. *Id.* at 1-2. Karr alleges that Dickey purchased the Parcel "from a deed-of-trust foreclosure sale held on May 24, 2022," which severed the ownership rights, if any, previously held by Plaintiffs. *Id.* In support of his argument, Defendant Karr

---

[7] The Report purports to be recorded in Trustee Sale Book 164, page 43, with the County Clerk of Kanawha County, West Virginia. [ECF No. 9-1].

attached a copy of a Final Order of the Circuit Court of Kanawha County, West Virginia on February 24, 2023, in the matter of *IV G Holdings, LLC, v. Don Staples II and Deborah L. Staples*, No. 22-P-429 (Cir. Ct. Kanawha Cty. Feb. 24, 2023) [the State Court's "Final Order"]. [ECF No. 7 at 6-9]. Defendant Karr requests that this court take judicial notice of the Final Order, which Karr asserts "settled and quieted the title" of the subject Parcel. *Id.* at 1-2. In light of my finding that Plaintiffs' Complaint is facially deficient, however, I decline to take up matters outside the pleadings. [ECF No. 7 at 3].

Lastly, Mr. Karr seeks an order directing Plaintiffs to compensate him for "the reasonable attorney time" he expended in responding to the Complaint; he asserts that Plaintiffs included "apparently knowingly false allegations in the complaint" by omitting mention of any "dates" in order to "to deceive the Court." *Id.* at 3. In support, Mr. Karr points to two findings in the State Court's Final Order, discussed *supra*. [ECF No. 7 at 3].

In a similar matter, the U.S. District Court for the District of Maryland explained that federal district courts "have the discretion to award a prevailing defendant attorney's fees when the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Woods v. Washington Metro Area Transit Auth.*, 18-cv-3494, 2019 WL 3766508, at *7 (D. Md. Aug. 9, 2019), *aff'd*, 785 Fed. App'x 188 (4th Cir. 2019) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). The *Woods* court cautioned, however, that "this exception from the American rule is an extraordinary one." *Id.* Pursuant to this standard, the *Woods* court ruled that, "[g]iven the dismissal of this case at an early stage[,] and that plaintiff proceeds in this case *pro se* and . . . is not a

lawyer presumed to understand the law, I decline to take the extraordinary measure of finding bad faith[8] and awarding the [defendant] fees." *Id*.

Just like the complaint in *Woods*, Plaintiffs' claim against Mr. Karr is dismissed herein at an early stage of the proceedings, prior to the close of the pleadings. While Mr. Karr did not set forth the amount of time expended in filing his subject motion to dismiss, from the record it does not appear that the time involved was substantial. The State Court Order cited by Mr. Karr was likely in his possession at the time Plaintiffs' filed their Complaint, by virtue of his stated representation of Ms. Gancs. [*See* ECF No. 7 at 3]. His combined motion and memorandum is comprised of less than four double-spaced pages, without substantive citations to legal authority. *See generally id*. To date, Mr. Karr has not made any additional filings in this matter; the record is devoid of any indication that Mr. Karr expended more than a minimal amount of time in responding to Plaintiffs' Complaint. Furthermore, the question of Mr. Staples's bad faith is adequately addressed *infra* in relation to Plaintiffs' motion to amend the complaint. I therefore find Mr. Karr did not demonstrate that "the extraordinary measure" of a fee award is appropriate under the circumstances of this case.

d.   **Plaintiffs' Motion to Amend the Complaint**

I now turn to Mr. Staples's motion to amend the Complaint, [ECF No. 17], and find that amendment is not proper under the circumstances. Mr. Staples initially filed

---

[8] To be clear, there is ample evidence of bad faith by Mr. Staples from a procedural standpoint in his direct contravention of multiple Court orders, as I address *infra*. However, I do not attribute to Mr. Staples an understanding of the legal concepts involved in the subject foreclosure and sale of the Parcel, which include secured transactions, successorship in title, and various contractual agreements and deeds employing complex terms of art; nor do I attribute an understanding of the legal legitimacy, application, or effect of these matters on Mr. Staples's perceived property rights. In other words, Mr. Staples's bad faith stems from the form of his pleadings which contravene the Court's express instructions, not from his understanding of the underlying facts or his pursuit of relief for violation of his perceived rights. The conduct at issue is Plaintiff's abuse of the Court system, rather than in relation to Mr. Karr.

his motion to amend in lieu of responding to Defendants' motions to dismiss by Magistrate Judge Tinsley's deadline of July 10, 2023. It was not until July 31, 2023—two weeks after the date by which Plaintiffs were ordered to respond to the Defendants' motions to dismiss—that Mr. Staples filed an untimely response and supporting memorandum of law (together, the "response brief"). [ECF No. 20]. Judge Tinsley's Order expressly notified Plaintiffs that failure to respond to the Defendants' motions to dismiss "may constitute abandonment of [Plaintiffs'] claims, and result in dismissal of this civil action for failure to prosecute." [ECF No. 8 at 1]. Judge Tinsley further explained to Plaintiffs that—while a document filed by a pro se party is to be liberally construed—a plaintiff's pro se status does not alter application of the Federal Rules of Civil Procedure, or this Court's Local Rules of Civil Procedure, to his or her filings. *See* L.R. Civ. P. 83.7. Judge Tinsley expressly ordered Plaintiffs to review this Court's *Pro Se Handbook* prior to filing a response, including Section 9 regarding Motions, and to review this Court's Local Rules of Civil Procedure, including Local Rule 7.1. [ECF No. 8 at 1-2]. Judge Tinsley's Order further directed Plaintiffs where to find these materials on the Court's website. *Id.* Plaintiffs did not contact the Court in advance of Judge Tinsley's deadline or otherwise request an extension of time to respond, and Mr. Staples's excuse for his untimely filing is simply too vague and nebulous to demonstrate good cause for disobeying Judge Tinsley's Order. Consequently, I find that dismissal is proper in accordance with the express terms of the Order.

Additionally, Mr. Staples's motion must be denied because, as Defendant Yates explains in his timely filed response to the motion to amend, permitting Plaintiffs to proceed on the proposed AC would be futile because Plaintiffs, once again, fail to assert

a plausible claim against any of the named Defendants. [ECF No. 19 at 5]. While Mr. Staples asserts in his motion that the proposed Amended Complaint ("AC") will clarify the issues, his claim is not borne out by the record; to the contrary, the AC does not address any of the facial deficiencies raised in the defendants' motions to dismiss—if anything, the AC doubles down with allegations and legal claims even *more* opaque than before. The AC completely ignores the elements of the statutory and common-law claims it asserts, and Plaintiffs make no effort therein to connect the AC's conclusory and seemingly irrelevant factual allegations to a plausible claim for relief. Instead, Plaintiffs' amended "Legal Claims" simply list—without elaborating—portions of the factual allegations followed by a mere label, such as "Fourth Amendment." This does not remotely resemble a plausible claim for relief. Consequently, I find that permitting the Plaintiffs to proceed on this amended pleading would be an exercise in futility, and Mr. Staples's request to amend must be denied.

e.   **Prefiling Sanctions**

Based on a review of the record evidence, the Court concludes exigent circumstances in this case justify prefiling injunction. *See Cromer,* 390 F.3d at 817–18. Mr. Staples has engaged in a pattern of continuous abuse of the judicial process by filing meritless and repetitious lawsuits, motions, and accompanying documents. He has filed five pro se lawsuits naming 25 defendants—some of them multiple times—despite having nearly identical claims dismissed in previous lawsuits. All of his lawsuits and filings recite similarly indiscernible and incoherent statements akin to Sovereign-Citizen doctrines. A review of the nature and content of the materials filed by Mr. Staples demonstrates an absence of any objective good faith-belief in the merits of his

28

claims. Even after four prior cases were dismissed, here he refiled a nearly identical action naming similar parties and recasting identical claims. Consequently, I now take up *sua sponte* whether a prefiling injunction is necessary to protect the public and to protect the Court's ability to function.

This Court is authorized to impose sanctions that are necessary to protect the Court's fundamental ability to function. The All Writs Act, 28 U.S.C. § 1651(a), "empowers federal district courts to enjoin vexatious litigants who have a history of abusing the court's limited resources." *Emrit v. Bd. of Immigr. Appeals*, 2:22-CV-00110, 2022 WL 4287659, at *7, (S.D. W. Va. Mar. 31, 2022), *report and recommendation adopted*, 2022 WL 3594518 (Aug. 23, 2022) (citing *Emrit v. Soc. Sec. Admin.*, 2:14-cv-01760, 2015 WL 4597834, at *4 (D. Nev. July 29, 2015) (enjoining vexatious litigant from making further filings absent prior leave by the district court)).

Pursuant to the All Writs Act, this Court is authorized to impose sanctions that are necessary to protect the Court's fundamental ability to function, including an order limiting an individual's access to the Court. *See Emrit v. Am. Commc'ns Network, Inc.*, 583 F. App'x. 46, 47 (4th Cir. 2014) (explaining authority of federal courts to impose sanctions, including a prefiling injunction limiting serial filer's access to the court); *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) ("Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants.")); *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Robinson*, 1999-cv-148, 2000 WL 33422739, at *1 (W.D.N.C. July 21, 2000) (denying a motion as frivolous and noting the federal courts' "power and obligation to protect themselves from abusive filing of

frivolous and repetitive claims"). [9]

The Fourth Circuit set forth four factors that "a district court should consider," along with all the relevant circumstances, "in deciding whether to issue a prefiling injunction" as a sanction. *Thomas v. Fulton*, 260 F. App'x 594, 596 (4th Cir. 2008) [the "*Thomas* factors"]. First, the Court must consider Mr. Staples's "history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits." *Id.* Second, the Court must consider whether Mr. Staples "had a good faith basis for pursuing the litigation, or simply intended to harass." *Id.* Third, the Court must consider "the extent of the burden on the courts and other parties resulting from the [Plaintiff's] filings." *Id.* Fourth and finally, the Court must consider "the adequacy of alternative sanctions." *Id.* While such an injunction should be used sparingly so as to "remain very much the exception to the general rule of free access to the courts," the Fourth Circuit explained that a district judge may limit a litigant's access to the courts in "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Cromer*, 390 F.3d at 818 (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)).

i.   **Litigation History**

The history of Mr. Staples's litigation before this Court supports a prefiling injunction. Prior to Plaintiff's filing of the instant action, the Court repeatedly notified Mr. Staples in the four other civil actions before this Court about the inadequacy of his

---

[9] While many of the cited matters addressed this issue in the context of a party proceeding *in forma pauperis*, the distinction is irrelevant. The Fourth Circuit ruled that the inherent authority of the court authorizes sanctions even when, like Mr. Staples in the instant matter, a plaintiff pays the filing fee and/or proceeds without counsel. *Henderson v. Haynes*, 3:23-cv-730, 2024 WL 460263, at *1 (W.D.N.C. Feb. 6, 2024) (quoting *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012)).

pleadings. *See Staples, Bey v. Wilson*, 3:23-CV-00377, 2023 WL 5674417, at *4 (S.D.W. Va. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 5673966 (Sept. 1, 2023) (Eifert, MJ.) (dismissing action on finding that Mr. Staples's failure to state a plausible, nonfrivolous claim in the pleadings); *Staples, Bey v. Childress*, 2:23-cv-400, 2023 WL 5956377, at *7 (S.D.W. Va. Aug. 17, 2023) (Aboulhosn, MJ.) (dismissing action per Rule 12(b)(6) based upon frivolous, conclusory, and "naked" assertions in Mr. Staples's pleadings), *report and recommendation adopted*, 2023 WL 5944293 (Sept. 12, 2023); *see also Staples v. Parsons*, 2:23-cv-386, at *16-17 (S.D. W.Va. Feb. 8, 2024) (Tinsley, MJ.), *report and recommendation adopted*, (Mar. 11, 2024); *Staples v. Navarro*, 2:22-CV-00526, 2024 WL 998831, at *5 (S.D.W. Va. Feb. 13, 2024) (Tinsley, MJ.), *report and recommendation adopted*, 2024 WL 992179 (Mar. 7, 2024) (finding pleadings failed to allege a plausible claim for relief). *See also Nagy v. FMC Butner*, 376 F.3d 252, 256-57 (4th Cir. 2004) (explaining generally a complaint is "frivolous" when it "lacks an arguable basis either in law or in fact") (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

Further, Mr. Staples was specifically notified of the potential consequences of continuing in his pattern of misconduct. In *Parsons*, for instance, Judge Copenhaver adopted Magistrate Judge Tinsley's Proposed Findings and Recommendations ("PF&R") and dismissed the civil action upon finding the pleadings to be fundamentally deficient. *Staples v. Parsons*, 2:23-CV-00386, 2024 WL 1048138, at *2 (S.D.W. Va. Mar. 11, 2024). In the PF&R adopted by Judge Copenhaver in *Parsons*, Magistrate Judge Tinsley found that Magistrate Judge Aboulhosn's PF&R in *Childress*, and Magistrate Judge Eifert's PF&R in *Wilson*, were both "quite clear that Plaintiffs' legal

theories were frivolous and merited dismissal." *Staples v. Parsons*, 2:23-cv-386, at *16-17 (S.D. W.Va. Feb. 8, 2024), *report and recommendation adopted*, (Mar. 11, 2024).

Magistrate Judge Tinsley's PF&R in *Parsons* also specifically warned Mr. Staples he could be subject to sanctions for further misconduct—including a narrowly tailored prefiling injunction limiting his access to the Court by restricting him from submitting any new filings "without first obtaining leave of court." *Id.* Further, the PF&R explained that, while "use of such measures against a pro se plaintiff should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts," such measures are warranted in "exigent circumstances" when a litigant engages in "continuous abuse of the judicial process by filing meritless and repetitive actions" to protect against further abuse of the judicial system with repetitive, duplicative, and frivolous lawsuits. *Id.* (citing *Cromer*, 390 F.3d at 817-818).

As Magistrate Judge Tinsley's PF&R further explained, "exigent circumstances" unquestionably exist when, as in the instant matter, a plaintiff files a deficient pleading with the Court after a substantively identical pleading containing the same flaws is dismissed. *Id.* (citing *Emrit v. Bd. of Immigr. Appeals*, 2:22-cv-110, 2022 WL 3594518, at *1 (S.D. W. Va. Aug. 23, 2022) (entering prefiling injunction against vexatious litigant)). Out of an "abundance of caution" due to Mr. Staples's pro-se status, Magistrate Judge Tinsley did not recommend sanctions at that time, but expressly warned Mr. Staples in the PF&R "that pursuing further vexatious litigation in this Court could subject him to sanctions." *Id.* Judge Copenhaver added his own warning in the Order adopting the PF&R that Staples was "on the verge of being sanctioned for his pattern of filing very similar and frivolous lawsuits[.]" *Staples v. Parsons*, 2:23-cv-386,

ECF No. 15 at *2-4 (S.D. W. Va. Mar. 11, 2024). Finally, as explained in this Court's Pro Se Handbook—which Magistrate Judge Tinsley expressly ordered Mr. Staples to review—"[t]he Court may penalize a party or attorney for failing to comply with a law, rule or order at any point while a lawsuit is pending . . . and pro se litigants are subject to the same sanctions as licensed attorneys." Pro Se Handbook, at § 2.3 p. 4.

Moreover, Mr. Staples had an opportunity—pursuant to 8 U.S.C. § 636(b)(1)(B) and Rules 6(d) and 72(b) of the Federal Rules of Civil Procedure—to submit objections to each Magistrate Judge's PF&R and address these issues; however, he failed to do so. Under the circumstances, Plaintiff's silence can be construed as a concession or abandonment of his claims. *See Intercarrier Communications, LLC v. Kik Interactive, Inc.*, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013).

Ultimately, the Court has explained a plaintiff's pleading obligations under the Federal Rules of Civil Procedure to Mr. Staples—expressly, specifically, and repeatedly. He has received notices and opportunities to be heard that are sufficient to comport with the requirements of due process. Based upon Mr. Staples's well-documented history of pursuing vexatious litigation devoid of any legal or factual basis, I find that he is likely to continue abusing the judicial process; consequently, the first *Thomas* factor supports entry of a prefiling injunction.

ii.   **Bad Faith**

In light of the foregoing, Mr. Staples's conduct is becoming a pattern of filing facially deficient pleadings in civil actions before the Court. Based upon this pattern, several indicia of bad faith on the part of Mr. Staples are beginning to emerge. As Magistrate Judge Tinsley's February 8, 2024, PF&R in *Parsons* explained, Mr. Staples

"has chosen to continue burdening the Court with baseless filings." *Parsons*, 2:23-cv-386, ECF No. 15 at *2-4. Just as in *Parsons*, Mr. Staples's pleadings in the instant action merely parrot the same fundamental deficiencies *already rejected* by the Court in each of his four other civil actions. Notably, aside from the parties' names and the particular parcel of real estate at issue, the pleadings in the instant action repeat—largely *verbatim*—the same allegations the Court previously found to be patently deficient in *Navarro*, 2:22-CV-00526, at ECF No. 55. [*See* ECF No. 12 at 1-6].

As Defendant Yates explains, Plaintiffs filed suit against the eponymous defendant in *Navarro* due to this defendant's past role as president of Shellpoint Mortgage Servicing Company ("Shellpoint"). In the instant action, Plaintiffs merely filed suit against another Shellpoint executive—Defendant Yates—and directed the same patently deficient allegations against Mr. Yates. *See id.* Mr. Staples's persistence in rehashing the same allegations in the instant matter is particularly concerning in light of the PF&Rs entered by all three Magistrate Judges in the Southern District of West Virginia, each one specifically identifying and explaining the deficiencies of Mr. Staples's pleadings, as well as the ultimate dismissal of all four actions for failure to state a claim under Rule 12(b)(6). Additionally, Magistrate Judge Tinsley directly explained these issues to Mr. Staples at an April 7, 2023, status conference in *Navarro*—long before Plaintiffs initiated the instant action on June 9, 2023. *See Navarro*, 2024 WL 998831, at *5 (S.D.W. Va. Feb. 13, 2024). Additionally, I find that Mr. Staples made a deliberate misrepresentation in August 1, 2023, correspondence to the Defendants in the instant matter, [*see* ECF No. 23], as explained by Mr. Yates, [*see* ECF No. 24], and confirmed by the record.

As a prolific serial plaintiff in both state and federal courts, Mr. Staples is an

experienced pro se litigant and is more than familiar with his federal court filing and pleading responsibilities. None of Mr. Staples's filings contain legally cognizable claims, or even a sufficient factual basis to allow the Court to interpret his claims liberally to plead an actionable claim. Simply put, in the face of consistent court orders specifically explaining the errors in Mr. Staples's litigation conduct and the potential consequences for ignoring the Court's warnings *prior to* the instant matter, I find that he knowingly lacked "a good faith basis for pursuing the litigation." *Thomas*, 260 F. App'x at 596. The second *Thomas* factor therefore weighs in favor of a prefiling injunction.

### iii.    **Burden on the Court and Other Parties**

The third *Thomas* factor likewise supports entry of a prefiling injunction. Mr. Staples's bad-faith conduct imposes substantial, unnecessary costs on the judicial system, multiplies the work of the district courts, wastes judicial resources, and overburdens the Court's gatekeeping function—all to the detriment of other litigants who need and deserve the Court's attention. Mr. Staples's vexatious filings have placed considerable burdens on Court personnel as well as the defendants named in his cases. Judges and their staff have devoted scores of hours to reviewing hundreds of pages of incomprehensible material, trying to decipher the nature of Plaintiff's claims and the basis for the relief sought. Undoubtedly, the defendants and their counsel have been similarly burdened.

### iv.    **Adequacy of Lesser Sanctions**

With respect to the final *Thomas* factor, I find that alternate sanctions are not sufficient to protect the Court's resources. The inadequacy of alternative sanctions is facially evident from the Court's record in the five civil actions brought by Mr. Staples,

because he failed to heed the Court's consistent findings that Mr. Staples's pattern of alleging conclusory and incoherent statements failed to state a claim. Likewise, the Court's consistent dismissal of all four prior actions did not deter him from subsequently filing this equally frivolous suit involving many of the same parties. Nor did Mr. Staples heed the Court's warning that he could face sanctions should he persist in filing frivolous actions—including a prefiling injunction.

Mr. Staples' failure to heed these warnings and persistence in reasserting the exact same pleading deficiencies, demonstrate that Court action is necessary—particularly when Mr. Staples had reason to know lacked an arguable basis in law or fact by virtue of the outcome in his *four separate civil actions*. *See Emrit v. Trump*, 1:19-CV-18, 2019 WL 140107, at *2 (S.D. Ohio Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 935028 (Feb. 26, 2019) (entering prefiling injunction when, "[n]otwithstanding [many] sanctions and admonishments," and "as a resounding lack of success in the federal courts that would give pause to most litigants, [the pro-se plaintiff] has given no hint of abating his pernicious conduct"). Consequently, all four *Thomas* factors weigh in favor of a protective prefiling injunction. *Thomas*, 390 F.3d at 818.

In light of the foregoing factors, Mr. Staples's pattern of misconduct—the patent frivolity of Plaintiffs' claims; Mr. Staples's prior notice by the Court of the impropriety of his conduct and the potential consequences; and his continued, well-documented abuse of the judicial process—unquestionably forms the very "exigent circumstances" contemplated by the Fourth Circuit in *Cromer*. I find that a narrowly tailored prefiling injunction prohibiting any further misconduct by Mr. Staples is both appropriate under

the circumstances and necessary to deter Mr. Staples from further disrupting the Court's ability to function and maintain its docket—protecting both the public and the Court from further waste of judicial resources.

While such sanctions against a pro-se plaintiff "should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts" *Cromer*, 390 F.3d at 817-818, Mr. Staples's pro-se status is not a license to harass others and abuse already overloaded court dockets. It is not the intent of the Court to deny Mr. Staples the right to file any good-faith lawsuit he believes to be appropriate in this Court. However, in order to ensure the wise allocation of judicial resources, and to safeguard against the filing of lawsuits lacking in good faith and merit, Mr. Staples will be required to obtain leave of court before filing any further lawsuits in the Southern District of West Virginia, as ordered *infra*.

## IV.    Conclusion

For the foregoing reasons, **IT IS ORDERED** as follows:

[1]     Mr. Karr's Motion to Dismiss [ECF No. 7] is **DENIED** as moot;

[2]     Ms. Gancs's Motion to Dismiss [ECF No. 9] and Motion to Submit Addendum [ECF No. 16] are each **DENIED** as moot;

[3]     Mr. Yates's Motion to Dismiss [ECF No. 11] and Motion to Construe [ECF No. 22] are **GRANTED**;

[4]     Mr. Staples's Motion for Leave to Amend [ECF No. 17] is **DENIED** as futile;

[5]     This matter is hereby **DISMISSED** from the Court's docket, without prejudice as to Plaintiffs' claim against Defendants Karr, Gancs, and Tomasik, but with prejudice as to Plaintiffs' claims against Mr. Yates;

[6]     Plaintiff, Mr. Staples, is declared a vexatious litigant pursuant to 28 U.S.C. § 1651(a), and  is hereby **ENJOINED** and **PROHIBITED**

from filing any further action, petition, or other paper in this Court absent his full compliance with one of the following procedures:

a.   Prior to filing any further action, petition, document, or other material with this Court, Mr. Staples must submit an application for leave to do so to the presiding Chief Judge of this Court, must attach a copy of this Order to the application; and must attach a notarized affidavit personally attesting that (1) the matters asserted in the proposed filing have never been raised in or addressed by any court; (2) that the proposed filing is not frivolous or made in bad faith; and (3) that he made a reasonable investigation of the facts, which support the relief he seeks. A copy of this Order must be attached to *any application*, and failure to fully comply will be sufficient grounds for denial of the application by the Chief Judge; or

b.   Alternatively, a licensed attorney may enter an appearance in this Court and file with the Clerk any further action, petition, document, or other materials on Mr. Staples's behalf without first seeking the leave, provided that counsel attaches a copy of this Order and his or her signed declaration of (1) good standing in this Court or in a jurisdiction where he or she is admitted to practice, (2) his or her personal review of the proposed filing, and (3) that there is a good-faith basis for seeking the relief requested therein.

Finally, Mr. Staples is **NOTIFIED** that failure to attach a full and complete copy of this Order to any proposed filing or failure to otherwise fully comply with every requirement set forth in this Order, will be sufficient grounds for denial of the application and imposition of sanctions, including monetary sanctions. The Court may, in its discretion, order that a short evidentiary hearing be held to assess the proposed filing.

**IT IS SO ORDERED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. Further, the Clerk is **DIRECTED** not to accept any pleadings from Mr. Staples absent his full compliance with the above restrictions. The Clerk is hereby **AUTHORIZED** to reject and refuse to file, and/or discard any new

complaint, petition, document on a closed case, or any other document or other materials submitted in violation of the Court's Order.

ENTER:     March 28, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE